**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 6, 2015[*]
Decided November 6, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2207

| | |
|---|---|
| ROBERT H. SARVIS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 14 C 09143 |
| BMO HARRIS BANK N.A., et al., | |
| *Defendants-Appellees.* | Edmond E. Chang, *Judge.* |

**O R D E R**

Robert Sarvis appeals from the dismissal of his lawsuit claiming that BMO Harris Bank and several of his relatives mismanaged trusts that were intended to benefit his brother, Andrew, and also conspired to defraud him and Andrew of their rights to expected inheritances. Andrew is deceased, but Sarvis asserted that he has standing to litigate his brother's claims, which, he insisted, had been assigned to him by the executor of Andrew's estate. The district court reasoned that none of the claims

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

belonging to Andrew had been assigned to Sarvis, and that Sarvis did not state any claim of his own. We affirm the judgment.

Andrew, who died in June 2014, was among the beneficiaries of separate trusts created by his maternal grandmother and uncle. The uncle, James Hammond, and Sarvis's maternal aunt, Mary Rodman, served as co-trustees of the grandmother's trust, along with BMO Harris. The bank also was a co-trustee, with Kenneth Nykiel, of the uncle's trust. In addition, Andrew had created a trust for his own benefit, and one of Mary Rodman's daughters, Margaret McElrath, was trustee at the time of his death. Andrew suffered from physical and mental impairments, and under the terms of the uncle's trust he was entitled to payments from the income and corpus for his support and medical care if the trustees determined that his resources were insufficient to cover those costs. Sarvis, though, was not a beneficiary of any of these trusts.

Sarvis's complaint, which relies on the diversity jurisdiction, names as defendants BMO Harris, Kenneth Nykiel, Margaret McElrath, and McElrath's two siblings, Sally Deforest and Thomas Rodman. Sarvis alleges that McElrath, Deforest, and Rodman conspired to persuade their mother, whom the grandmother's trust had given discretion to distribute Michigan real estate that was part of the corpus, to deprive Andrew of a share of the property. BMO Harris and Nykiel, Sarvis continues, breached their fiduciary duty as trustees of the uncle's trust by hoarding assets throughout Andrew's lifetime when they knew or should have known that Andrew was in dire need of money to cover living and medical expenses. McElrath similarly breached her fiduciary duty, says Sarvis in his complaint, by looting Andrew's trust.

All of those allegations would seem to relate exclusively to Andrew. Sarvis further alleges, though, that McElrath and Rodman pressured Andrew to execute a will leaving everything to McElrath's son and nothing to Sarvis. This contention is not new; Sarvis challenged the will when it was probated in an Illinois circuit court, but he settled that challenge by agreeing not to "attempt to file any citations on behalf of the Estate, or oppose the closing of the estate," in exchange for $10,000 and the assignment equally with his sister of Andrew's "personal effects and other tangible personal property." Sarvis's sister reassigned her half to Sarvis, who then filed this action.

In dismissing the suit on the defendants' motions, the district court reasoned that Sarvis lacks standing to complain about conduct that harmed only Andrew because he is not the executor of Andrew's estate. The court rejected as unreasonable Sarvis's contention that the "personal effects and other tangible personal property" given to him

by the settlement agreement include intangible rights of action. What's more, the court continued, Sarvis cannot prevail against his cousins, McElrath and Rodman, for prodding Andrew to disinherit him because Sarvis already had settled that claim when he challenged Andrew's will. Sarvis's factual allegations and legal theories, the court noted, were the same in state court, and thus the final judgment approving the settlement agreement and dismissing the will contest with prejudice should be given "*res judicata* effect."

On appeal Sarvis continues to insist that he may litigate claims for injuries to Andrew as the assignee of Andrew's "personal effects and other tangible personal property." The district court erred, he says, by misdefining "personal effects" to exclude rights of action. Sarvis also argues that the district court wrongly assumed that his claim about the Michigan real estate was brought on Andrew's behalf. The undue influence occurred in Texas, Sarvis explains, and thus he has a personal stake because as Andrew's heir he is an "interested person" under Texas law. Finally, Sarvis contends that the court erred in precluding his claim that Andrew was duped into leaving him nothing. This claim, Sarvis says, is for tortious interference, which is legally distinguishable from a will contest because the parties and remedy are different. We reject all of these contentions.

The district court correctly dismissed the claims alleging a breach of a fiduciary duty running to Andrew because Sarvis does not have standing to bring them. Sarvis misconstrues the unambiguous language of the settlement agreement, which assigns to him only Andrew's "personal effects and other tangible property," not rights of action or other intangibles. The settlement agreement provides that Illinois law shall govern questions of interpretation, and in Illinois the term "personal effects" usually refers to tangible personal property "worn on, carried by, or otherwise having an intimate relation to the person." *In re Estate of Goodkind*, 827 N.E.2d 6, 13–14 (Ill. App. 2005) (quoting *Landstrom v. Sarvis Krettler*, 435 N.E.2d 149, 151 (Ill. App. 1982)). Illinois courts have recognized that the term may have a broader meaning if its use creates a latent ambiguity in the contract and the drafter's "intent suggest[s] a construction beyond the term's ordinary meaning." *Id.* at 14. But that is not the situation here. The settlement agreement assigns Andrew's "personal effects and *other tangible personal property*" to Sarvis. On its face the agreement confines itself to the ordinary meaning of "personal effects." The text is unambiguous, and it is no less so simply because Sarvis now asserts that it would have been unreasonable for him to accept a settlement giving him only Andrew's minimal tangible items (along with $10,000, which he neglects to mention). Because Sarvis is not the assignee of any intangible property, he is not the rightful owner of any legal claim that might have been part of Andrew's estate.

The district court also correctly dismissed the claim that Sarvis was wrongly excluded from his brother's will, as that claim is negated by the settlement agreement. We agree with Sarvis that, under Illinois law, a will contest is distinct from a tort action for intentional interference with a testamentary expectation. *See Bjork v. O'Meara*, 986 N.E.2d 626, 631 (Ill. 2013). Illinois courts will not allow the tort action to proceed, however, if the practical effect of the action would be to invalidate a will already recognized as valid under the Probate Act. *See Robinson v. First State Bank of Monticello*, 454 N.E.2d 288, 294 (Ill. 1983) ("[I]f we were to allow the plaintiffs to maintain their tort action, we would be giving them a second bite of the apple and defeating the purpose of the exclusivity of a will contest under [the Probate Act]."). This limitation on the tort action—what the district court characterized as a "*res judicata* effect"—applies when the plaintiff had "an opportunity to contest a probated will but chose not do so, and subsequently enter[ed] into an agreement to take no further court action." *Bjork*, 986 N.E.2d at 632 (quoting *In re Estate of Ellis*, 923 N.E.2d 237, 242 (Ill. 2009)). In *Robinson* the court did not allow the plaintiffs to proceed with their action for tortious interference because they had previously chosen not to contest the probated will, entering instead into a settlement agreement for $125,000 in which they agreed to release the other parties from all claims arising from the will. *Id.* at 293. As with the plaintiffs in *Robinson*, Sarvis not only had notice of Andrew's probated will, he also challenged the will in state court and ultimately accepted $10,000 and Andrew's "personal effects and other tangible property" in exchange for abandoning his challenge to the will and releasing all claims against the estate. Sarvis, therefore, fails to state a claim for tortious interference because that claim is no longer available to him.

Finally, the district court correctly dismissed for lack of standing Sarvis's claim of conspiracy against McElrath, Deforest, and Rodman for unfairly influencing their mother to deprive Andrew of his share of the real estate in Michigan. Sarvis asserts that he has standing as an "interested person" because he stood to inherit 50% of the property as Andrew's heir. But Sarvis has no interest in Andrew's estate because he is not a beneficiary of Andrew's validly probated will, which Sarvis agreed not to contest.

AFFIRMED.